[No. 9325–8–I.   Division One.   October 11, 1982.]

The Briedablik, Big Valley, Lofall, Edgewater, Surf-
rest, North End Community Association,
et al, *Petitioners,* v. Kitsap County,
et al, *Respondents.*

*Roger M. Leed,* for petitioners.

*C. Danny Clem, Prosecuting Attorney for Kitsap County, W. Daniel Phillips, Deputy, Joel M. Gordon,* and *Peter Buck,* for respondents.

CALLOW, J.—This is an appeal from an order of the King County Superior Court transferring venue to Kitsap County. At issue is whether RCW 36.01.050, establishing venue for suits by or against a county, is subject to the general change of venue statute, RCW 4.12.030.

In dispute is a proposal by the Tempus Fugit Company to develop 26 acres of agricultural and forest land near the town of Poulsbo in Kitsap County. The development, known as the North Kitsap Business Community, would comprise 11 acres of light manufacturing enterprises plus a 15–acre residential development. The Kitsap County comprehensive plan designates the area as "Rural," and the property is zoned for agricultural and forestry purposes.

The Tempus Fugit Company applied to Kitsap County to rezone the subject property to allow light manufacturing and neighborhood businesses. After preparation of an environmental impact statement, the county commissioners approved the project on recommendation of the county planning commission. An *ad hoc* citizens committee appointed by the county commissioners to study the project and prepare a set of criteria for consideration of future industrial siting proposals also approved the project.

This lawsuit was commenced by the Briedablik, Big Valley, Lofall, Edgewater, Surfrest, North End Community Association and others (NECA) against the Tempus Fugit Company, Kitsap County, and others (Tempus Fugit), seeking a writ of certiorari and declaratory relief blocking the project as approved. NECA's complaint contends that the County's approval of the project lacked the appearance of fairness and violated the provisions of the Planning Enabling Act of the State of Washington (RCW 36.70) and the State Environmental Policy Act of 1971 (RCW 43.21C). NECA and Tempus Fugit stipulated to an order issuing the writ of review and directing the preparation and delivery of the administrative record.

NECA filed its complaint in King County pursuant to RCW 36.01.050, which provides that "[a]ll actions against any county may be commenced in the superior court of

such county, or of the adjoining county . . ." The parties do not dispute that King County adjoins Kitsap County. Tempus Fugit moved for a change of venue to Kitsap County, arguing that the convenience of the witnesses and the ends of justice would be promoted by the change. Tempus Fugit based its motion upon RCW 4.12.030, which provides:

> The court may, on motion, in the following cases, change the place of trial when it appears by affidavit, or other satisfactory proof:
>
> . . .
>
> (3) That the convenience of witnesses or the ends of justice would be forwarded by the change . . .

Accompanying Tempus Fugit's motion for the change of venue was an affidavit of counsel for Tempus Fugit indicating that he anticipated calling most of the Kitsap County officials who participated in the evaluation of the Tempus Fugit proposal, and contending that trial in Kitsap County would reduce the inconvenience of appearing in court. The affidavit also asserted that an earlier trial date could be set in Kitsap County than in King County, such early trial thereby promoting the ends of justice. The motion was granted and this appeal follows upon an order granting discretionary review.

Tempus Fugit contends that change of venue statutes apply whenever a county is a party to an action, and that while RCW 36.01.050 permits actions to be commenced in adjoining counties, it does not preclude a subsequent change of venue to any statutorily authorized county. NECA argues that permitting changes of venue would render meaningless a plaintiff's choice of counties under RCW 36.01.050, defeating the Legislature's intent in allowing actions against counties to be tried in other counties.

"[T]he right to sue the state, a county, or other state–created governmental agency must be derived from statutory enactment; and it must be conceded that the state can establish the conditions which must be met before that right can be exercised." *Nelson v. Dunkin,* 69 Wn.2d

726, 729, 419 P.2d 984 (1966). General legislation, such as the change of venue statute, is inapplicable to the State or its political subdivisions, unless the statute expressly applies to them, or unless they must be included by necessary implication. *Port of Seattle v. ILWU,* 52 Wn.2d 317, 324 P.2d 1099 (1958). Our inquiry is whether anything in the laws or legislative history of the statute demonstrates an intent to subject counties to the change of venue statute. Both statutes originated with the 1854 territorial Legislature.

The question whether RCW 4.12.030 authorizes a change of venue in suits against the *State* was resolved in *State ex rel. Thielicke v. Superior Court,* 9 Wn.2d 309, 114 P.2d 1001 (1941), where the court affirmed a Thurston County Superior Court order denying a motion for change of venue. The statute in question, Rem. Rev. Stat. § 886 (now codified as RCW 4.92.010), then provided:

> Any person or corporation having any claim against the state of Washington shall have a right of action against the state in the superior court of Thurston county.

The plaintiff in *Thielicke* sought an order changing venue pursuant to RCW 4.12.030. The court held that the change of venue statute did not apply to actions against the State.

> A sovereign state cannot be sued without its consent. The immunity is absolute, and, when consent is given, it may be qualified or conditional and may specify a particular court in which the permitted actions may be maintained. . . .
> The foundation for actions against this state was laid by Art. II, § 26, of the constitution: "The legislature shall direct by law in what manner and in what courts suits may be brought against the state." Such a constitutional provision is not self–executing. It does not become operative until the legislature has acted.

(Citation omitted.) *Thielicke,* at 310–11.

The court held that the statute conferred jurisdiction as well as venue in the Superior Court for Thurston County,

and searched for legislative intent as to whether venue may be changed.

> It is a well–established rule of ancient origin that a general statute which tends to restrain or diminish rights and interests should not be construed to apply to the sovereign government unless the same be comprised therein expressly by name or be included by necessary implication.
>
> There is nothing either express or implicit in the language of the general change of venue statute [RCW 4.12-.030] which signifies that it should be applied to suits against the state. Indeed, it could hardly be otherwise in view of the fact that the statute, first enacted as a part of the territorial practice act of 1854, and not amended subsequent to the code of 1881, antedates the adoption of the state constitution.

(Citations omitted.) *Thielicke,* at 314. The court found nothing implicit in the language of RCW 4.92.010, or its legislative history, demonstrating that the change of venue statute should apply to actions against the State.

A similar analysis was employed in *Tennyson v. Department of Labor & Indus.,* 189 Wash. 616, 66 P.2d 314 (1937), where the court examined the statute determining venue in workmen's compensation appeals.

> It would have been competent for the legislature to have made the determinations of the [Department of Labor and Industries] final. Instead, it provided a procedure for court review. The review provided for is lodged, in the first instance, in the superior court of the county of claimant's residence, with an appeal to the supreme court. No provision is found in the act authorizing a transfer of the appeal from the superior court of the county of the claimant's residence to the court of another county.

(Citations omitted.) *Tennyson,* at 618. The court also examined the general change of venue statute, unchanged since 1881, and found nothing demonstrating that the Legislature intended it to apply to workmen's compensation cases.

The statute interpreted in *Thielicke,* RCW 4.92.010, was

amended by the Legislature in 1963 to permit and establish procedures for making tort claims against the State.[1] In *Architectural Woods, Inc. v. State*, 7 Wn. App. 855, 503 P.2d 1138 (1972), the court was asked to decide whether the provision that "[s]uch action shall be subject to a change of venue as provided by law" related only to newly authorized tort claims or to all claims against the State. Applying the rule that the qualifying phrase ("such action") refers solely to the last noun ("actions on a claim arising out of tortious conduct"), the court held that only tort claims against the State were subject to the change of venue statute, while other claims were not.

> Of course, such a rule of statutory construction would not apply if a contrary intention does appear in the statute. *In re Andy*, 49 Wn.2d 449, 302 P.2d 963 (1956). We see no such contrary intention here. All of the 1963 amendments related to tort claims. The basic jurisdictional requirements (together with their long–standing and rigid judicial interpretations, which we must presume were well known to the legislature) were not changed.

*Architectural Woods, Inc. v. State, supra* at 858.

The court found its decision to be consistent with the tort claims statute, RCW 4.92.090, which holds the State liable for its tortious conduct "to the same extent as if it

---

[1]As amended in 1963, RCW 4.92.010 provided:

"Any person or corporation having any claim against the state of Washington shall have a right of action against the state in the superior court of Thurston county. The plaintiff in such action shall, at the time of filing his complaint, file a surety bond executed by the plaintiff and a surety company authorized to do business in the state of Washington to the effect that such plaintiff will indemnify the state against all costs that may accrue in such action, and will pay to the clerk of said court all costs in case the plaintiff shall fail to prosecute his action or to obtain a judgment against the state: *Provided*, That actions for the enforcement or foreclosure of any lien upon, or to determine or quiet title to, any real property in which the state of Washington is a necessary or proper party defendant may be commenced and prosecuted to judgment against the state in the superior court of the county in which real property is situated, and that no surety bond as above provided for shall be required in any such action: *Provided further*, That actions on a claim arising out of tortious conduct maye [*sic*] be commenced against the state in the superior court of Thurston county, the county in which the claim arises, or the county in which the plaintiff resides. Such action shall be subject to a change of venue as provided by law." Laws of 1963, ch. 159, § 1.

were a private person or corporation." Tort claims against private persons or corporations have always been subject to venue changes.

RCW 4.92.010 was again amended in 1973, enlarging the number of counties where venue may lie in suits against the State.[2] In *Sim v. State Parks & Rec. Comm'n,* 90 Wn.2d 378, 583 P.2d 1193 (1978), the court held that RCW 34.04-.070, which confers venue in Thurston County over all declaratory judgment actions challenging the validity of state administrative agency rules, provides exclusive venue. It rejected the contention that RCW 4.92.010 furnishes alternative venue.

> Since the two statutory provisions seemingly conflict, one appearing to limit venue to Thurston County and the other appearing to authorize venue elsewhere, the special statute should be given controlling effect. . . . If we were

---

[2]RCW 4.92.010 now provides:

"Any person or corporation having any claim against the state of Washington shall have a right of action against the state in the superior court. The plaintiff in such action shall, at the time of filing his complaint, file a surety bond executed by the plaintiff and a surety company authorized to do business in the state of Washington to the effect that such plaintiff will indemnify the state against all costs that may accrue in such action, and will pay to the clerk of said court all costs in case the plaintiff shall fail to prosecute his action or to obtain a judgment against the state: *Provided,* That in actions for the enforcement or foreclosure of any lien upon, or to determine or quiet title to, any real property in which the state of Washington is a necessary or proper party defendant no surety bond as above provided for shall be required.

"The venue for such actions shall be as follows:

"(1) The county of the residence or principal place of business of one or more of the plaintiffs;

"(2) The county where the cause of action arose;

"(3) The county in which the real property that is the subject of the action is situated;

"(4) The county where the action may be properly commenced by reason of the joinder of an additional defendant; or

"(5) Thurston county.

"Actions shall be subject to change of venue in accordance with statute, rules of court, and the common law as the same now exist or may hereafter be amen... lopted, or altered.

"Act... shall be tried in the county in which they have been commenced in the abs... of a seasonable motion by or in behalf of the state to change the venue ... action."

to interpret RCW 34.04.070 as merely permissive of venue in Thurston County, the explicit venue provision, and its reference to Thurston County, would in effect be surplusage. . . .

. . . Were we to hold in this case, absent express legislation to the contrary, that alternative local venue is available under RCW 4.92.010, we would defeat this purpose of the venue limitation of RCW 34.04.070.

(Citations omitted.) *Sim,* at 382–83.

Unlike RCW 4.92.010, the statute authorizing actions against *counties* has survived relatively unchanged. RCW 4.08.120 provides:

An action may be maintained against a county . . . either upon a contract made by such county . . . or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation.

In *State ex rel. King Cy. v. Superior Court,* 104 Wash. 268, 176 P. 352 (1918), a company located in Pierce County commenced suit in Pierce County against King County for the alleged wrongful deflection of a stream bounding the company's property. King County had undertaken flood control measures in Pierce County in cooperation with that County. King County moved for a change of venue based on the common law doctrine that a county may only be sued within its boundaries. The motion was denied and the trial court was affirmed on appeal. The court declined to apply the common law rule and held that counties are "subject to suit as an ordinary party litigant and, as such, answerable under the general rules governing procedure in the superior courts." *King County,* at 271. The court also held that unless the county was expressly exempted from the practice act, venue would lie as in all other civil actions.

What was apparently not called to the court's attention in *King County* was the existence of Laws of 1854, § 6, p. 329, now in the code as RCW 36.01.050.[3] It appears that

---

[3]RCW 36.01.050 states:

"All actions against any county may be commenced in the superior court of such county, or of the adjoining county, and all actions by any county shall be

the code reviser discovered the existence of RCW 36.01.050 upon the codification of RCW and the abandonment of Remington's Revised Statutes. In RCW Title 36, the legislative history of RCW 36.01.050 reads: "[1963 c 4 § 36.01-.050. Prior: 1854 p 329 § 6; *No RRS.*]" (Italics ours.) Therefore, it appears that from statehood in 1889 until the codification of the Revised Code of Washington in 1950, the specific statute pertaining to the venue of actions against counties was overlooked and the decisions reached during that period were unaware of the content of the statute. This territorial law was never repealed, remained in force upon attainment of statehood (Const. art. 27, § 2) and was reenacted by Laws of 1963, ch. 4, § 36.01.050. It was only in 1963 that Laws of 1854, § 6, p. 329, was repealed. *See* RCW 36.98.040(1). The court's decision in *King County,* holding "the county of King . . . liable to answer in the county where the injury occurred", *King County,* at 276, ignored the existence of the statute regarding venue of actions by or against counties. The action in Pierce County was proper only because Pierce County adjoins King County and not because the alleged injury occurred in Pierce County. Laws of 1854, § 6, p. 329.

The principle incorrectly espoused in *King County* was applied in *Gabrielson v. State,* 67 Wn.2d 615, 620, 408 P.2d 1020 (1965), a wrongful death action involving as defendants the State, a county and a PUD. Only the public utility district sought review of a denial of change of venue from Pierce County to Lewis County where the death had occurred. Actions against public utility districts are governed by RCW 54.16.110.[4] The court stated:

As a municipal corporation, [a public utility district] is subject to the same rules of process and procedure as

commenced in the superior court of the county in which the defendant resides, or in the county adjoining the county by which such action is commenced."

[4]RCW 54.16.110 provided:
"A district may sue in any court of competent jurisdiction, and may be sued in the county in which it is located." Laws of 1955, ch. 390, § 12.

govern other individual or corporate litigants, unless it be by statute expressly provided otherwise.

The court held that it would not determine whether venue could be changed because venue was properly laid and the public utility district venue statute "is couched in permissive, not mandatory, language and in such form would appear to be consistent rather than inconsistent with our other general venue provisions." *Gabrielson,* at 620.

The rule of *Gabrielson v. State* is consistent with the rule announced in *Thielicke, Architectural Woods,* and *Tennyson* that governmental venue statutes are not subject to a change of venue "unless the same be comprised therein expressly by name or . . . by necessary implication." *Thielicke,* at 314. *Gabrielson* found the statute setting venue in public utility district cases to be couched in broad, permissive terms and consistent with general venue provisions. The court thus conducted the examination called for by *Thielicke* and found it appropriate to apply general venue provisions to public utility districts.

In contrast to public utility district venue and general venue applicable to individuals and corporations, RCW 36.01.050 permits venue to lie in actions against counties only in a narrowly circumscribed number of forums. Contrary to *King County,* venue does not lie where an alleged injury occurs if the injury took place in a county other than the subject county or an adjoining county. Counties are thus granted a significant advantage over other individuals or corporations in that they cannot be compelled to defend themselves in distant forums. That was the purpose of the common law rule that counties need not defend in extraterritorial courts.

> [T]he duties of municipal officers being essentially local, they should not be put to the compulsion of attending upon trials distant from the seat of that government which they are under obligation to administer.

*King County,* at 270. *See also North Yakima v. Superior Court,* 4 Wash. 655, 30 P. 1053 (1892).

The Legislature modified the common law rule only by

allowing suit in an adjoining county. RCW 36.01.050. The policy behind the modification is apparently to provide plaintiffs with alternative forums without the need to demonstrate bias or impartiality in any other forum. The statute affords a degree of protection to plaintiffs suing counties without unduly burdening the county officials who must respond to the charges. A comparison of the wording of the statute as enacted in 1854 with the wording as it appears in RCW 36.01.050 shows that it is identical except for the substitution of the "superior" court for the "district" court as the proper forum. The statute is composed of two parts; the first dealing with actions *by others* against counties which *may* be commenced in the county or in an adjoining county, and the second dealing with actions *by* counties which *shall* be commenced in the county in which the defendant resides or in an adjoining county. The solicitude of the statute is for the fairness of the forum to the other party, *not* to the county. A plaintiff can avoid the county as the forum when the county is the defendant and a defendant *cannot* be sued by a county with the plaintiff county as the forum *unless* the defendant resides therein. The legislation reflects a recognition of the power of the sovereign and the weakness of the individual, permitting a county to sue the individual within its borders only if the defendant is, at least, a resident thereof.

In summary, RCW 36.01.050 expressly removes counties from the general venue provisions of RCW 4.12. As in *Thielicke, Architectural Woods, Tennyson,* and *Sim,* we find nothing in the statutes or legislative history explicitly or implicitly supporting the contention that the Legislature intended the county venue statute to be subject to the change of venue provisions. *Compare* RCW 4.92.010 (expressly permitting a change of venue in actions against the State) *with* RCW 36.01.050 (making no reference to venue changes in actions against counties). In permitting actions against counties to be tried in adjoining counties, the Legislature intended to afford litigants a relatively convenient alternative forum in which to bring their actions.

We believe the Legislature may well have had in mind circumstances such as exist here where county officials are involved. In such circumstances private litigants should not be required to appear in the superior court of the same county where those same county officials exercise financial control over the budgets of the court. Requiring private litigants to try their cases under such circumstances violates the tenets of the appearance of fairness doctrine. This choice of forum is a right statutorily accorded the parties, and is not dependent upon any showing of partiality or inability to obtain a fair trial in the subject county. Absent clear evidence of a contrary legislative intent, we conclude that the general change of venue statute is not applicable to suits against counties. If suit is commenced against a county in a proper forum, the superior court lacks statutory authority to transfer venue to another county, even to a county where the action originally could have been brought.[5]

The order transferring venue is vacated and the case remanded for further proceedings in King County.

WILLIAMS, J., concurs.

ANDERSEN, C.J. (dissenting)—The majority holds that once a county is sued in an adjoining county, the county sued cannot obtain a change of venue regardless of what showing it may make. I respectfully dissent on three separate grounds—none of which relate to the merits of that result.

First, the majority's intricate interpretation of two statutes plain on their face loses sight of that most elementary of all rules of statutory construction, that

> *Where the language of the statutes involved is clear and unambiguous it requires no construction or interpretation.*

---

[5]Parties intending to file lawsuits against counties and desirous of having the case heard by a judge or jury from another county may well consider the alternative of requesting a visiting judge or jury. RCW 4.12.040; RCW 10.25.140.

(Italics mine.) *Thompson v. Lewis Cy.,* 92 Wn.2d 204, 207, 595 P.2d 541 (1979) and cases there cited. Moreover, "if the language used is unambiguous a departure from the plain meaning is not justified by policy considerations." *State Chartered Banks v. Peoples Nat'l Bank,* 291 F. Supp. 180, 197 (W.D. Wash. 1966).

The two statutes here involved could not be more clear or less ambiguous. One provides that a county "may" be sued in an adjoining county;[6] and another provides that a party sued "may" move for a change of venue.[7] That is precisely what happened here.

Plaintiffs sued Kitsap County and others in the Superior Court for King County as they were entitled to do. Thereupon, certain of the defendants moved to change the venue of the action to Kitsap County as I believe they also had every right to do. The motion for a change of venue to Kitsap County was supported by an affidavit detailing the names of 18 Kitsap County residents (including a number of public employees and officials) who would be testifying for the defense. That affidavit pointed out that it would be disruptive and cause loss of time for the county officials and employees if they had to go to King County, and also, that the suit could be tried much faster in Kitsap County

---

[6] "Venue of actions by or against counties. All actions against any county *may* be commenced in the superior court of such county, or of the adjoining county, and all actions by any county shall be commenced in the superior court of the county in which the defendant resides, or in the county adjoining the county by which such action is commenced." (Italics mine.) RCW 36.01.050.

The fact that this statute employs the words "may" and "shall" both, conclusively demonstrates that the Legislature was not only well aware of, but also intended that there be, a distinction between the two words. *See Black Ball Freight Serv. v. United States,* 266 F. Supp. 287, 289 (W.D. Wash. 1967); *Seeber v. Public Disclosure Comm'n,* 96 Wn.2d 135, 139, 634 P.2d 303 (1981).

[7] "Grounds authorizing change of venue. The court *may,* on motion, in the following cases, change the place of trial when it appears by affidavit, or other satisfactory proof:

". . .

"(3) That the convenience of witnesses or the ends of justice would be forwarded by the change; . . ." (Italics mine.) RCW 4.12.030(3).

because of court congestion problems in King County. Under the law as it has been considered, the trial court's ruling granting the motion for a change of venue to Kitsap County was a discretionary ruling,[8] and no abuse of that discretion is suggested by the majority.

Second, the majority's reliance on decisions construing statutes relating to venue of suits against the State in construing the statute relating to venue of suits against a county is misplaced. That is because in those decisions the statutes construed were mandatory and related to where the State "shall" be sued. Obviously, then, there was a conflict which needed judicial interpretation in those situations where the mandatory provisions of the venue of suits against the state statute conflicted with the permissive provisions of the change of venue statute. That is not what is involved here, however, since the statute providing where counties can be sued is permissive as is the change of venue statute. The two situations, therefore, are not comparable. Both statutes here can and should be given effect.

Third, the majority holding is at cross purposes with the principle that

*Where the language of a statute is clear, we will respect it.*

(Italics mine.) *Griffin v. Department of Social & Health Servs.,* 91 Wn.2d 616, 624, 590 P.2d 816 (1979).

---

[8]*Russell v. Marenakos Logging Co.,* 61 Wn.2d 761, 765, 380 P.2d 744 (1963); *Hauge v. Corvin,* 23 Wn. App. 913, 915, 599 P.2d 23 (1979). As held in *Baker v. Hilton,* 64 Wn.2d 964, 965–66, 395 P.2d 486 (1964):

Where the relevant statute provides several places where venue may be proper, the choice lies with the plaintiff in the first instance. When the defendant seeks to change the venue, the matter lies within the discretion of the trial court and is reviewable only for an abuse of that discretion. Concerning proper venue, an "abuse of judicial discretion is not shown unless the discretion has been exercised upon grounds, or to an extent, clearly untenable or manifestly unreasonable."

And further:

The legislature has placed the matter of a change of venue within the sound discretion of the trial court, and, in the absence of clear abuse of that discretion, this court will not interfere with the handling of trial matters.

*Baker v. Hilton, supra* at 966.

The word "respect" in the principle just quoted is an important one. It is vital to the concept of mutual respect between the three independent branches of state government that the courts keep in mind at all times, as the State Supreme Court has held, that "[w]e are not a super legislature."[9] That is not just an abstract concept in this case since this court cannot know what effect the majority decision might have on county budgets and levels of service. This is the kind of thing which it is in the nature of the legislative process to determine through staff studies, committee hearings and floor debate, prior to changing a statute. Appellate courts do not have that factfinding capability and the lack of it accounts for the unforeseen disruptive effect of so many exercises in what is commonly termed "judicial legislation". It was Justice Oliver Wendell Holmes who wisely admonished:

> *it must be remembered that legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts.*

(Italics mine.) *Missouri, K. & T. Ry. v. May,* 194 U.S. 267, 270, 48 L. Ed. 971, 24 S. Ct. 638 (1904).

For the foregoing reasons, I respectfully dissent from the majority opinion and would affirm the trial court's order changing venue of this case from King to Kitsap County.

Reconsideration denied January 25, 1983.

Review granted by Supreme Court June 17, 1983.

---

[9] *Aetna Life Ins. Co. v. Washington Life & Disab. Ins. Guar. Ass'n,* 83 Wn.2d 523, 528, 520 P.2d 162 (1974).